UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ROBERT BOOKER, et al.                                                                                    PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:02-CV-569-S

CHIEF MICHAEL HORTON, et al.                                                                    DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendants, Jefferson County Fiscal Court, Stewart Williams, Brett O'Loughlin, Derek Browning, Andrew Young, Ernest Fox, and Jason Erion, for summary judgment (DN 76).

### BACKGROUND

This action was initiated on October 4, 2002, on behalf of thirteen plaintiffs, including Larry Lewis ("Lewis") and Alphonso Taylor ("Taylor")(collectively the "plaintiffs"). On October 25, 2002, a first amended complaint was filed and subsequently on March 21, 2003, this court entered an order permitting the filing of a second amended complaint. Since the filing of the second amended complaint, we have dismissed several defendants (DN 20 and 56) and all plaintiffs, except Lewis and Taylor (DN 37 and 48).

The plaintiffs allege in the second amended complaint (the "complaint") that on October 5, 2001, they were housed together in Dormitory 3-6B of the Jefferson County Corrections Department. The complaint further alleges that on October 5, 2001, all of the Dormitory 3-6B inmates were ordered out of the dormitory and separated into groups of four to six. These groups were taken to various locations including the gymnasium, serving area, visiting room, and/or multipurpose room. Once there, the inmates were ordered to remove all of their clothing and submit

to strip searches. Although the parties dispute the privacy of the searches, the plaintiffs allege that the strip searches were conducted in full view of the other inmates being searched, and in full view of inmates housed in other dormitories.

Lieutenant Brett O'Loughlin ("O'Loughlin") authorized Sergeant Derek Browning ("Browning") to conduct the strip searches after Browning had reported evidence of a burning smell in the dormitory. Browning, Officer Andrew Young ("Young"), Officer Ernest Fox ("Fox"), and Officer Jason Erion ("Erion") personally carried out the strip searches. Captain Stewart Williams ("Williams") was partially responsible for investigating the incident and received at least one memorandum from Browning regarding the strip searches.

The plaintiffs have filed suit under 42 U.S.C. § 1983, claiming violations of the Fourth, Eighth and Fourteenth Amendments with supplemental state law claims, in connection with the strip searches conducted on October 5, 2001. The remaining defendants, Young, Fox, Erion, O'Loughlin, Williams and the Jefferson County Fiscal Court, have filed for summary judgement.

## STANDARD OF REVIEW

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes

- 3 -

it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## DISCUSSION

We will examine each defendants' argument for summary judgment separately.

### Officer Andrew Young

Young argues that he is entitled to summary judgment as to all claims asserted against him by Lewis because he had no personal involvement in Lewis' strip search. This fact is not disputed. All parties agree that Young performed strip searches inside the dormitory and that Lewis was searched in the multipurpose room. Since Lewis cannot establish that Young was personally involved in the alleged deprivation of his constitutional rights, we will grant summary judgment in favor of Young in regards to the claims alleged against him by Lewis.

Young also argues that he is entitled to qualified immunity because his conduct did not violate clearly established rights. "According to the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir., 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Although the plaintiffs argue that the right not to be strip searched in full view of other inmates and officers was clearly established on October 5, 2001, we disagree, and will therefore grant summary judgment in favor of Young on all section 1983 claims brought against him.

The Sixth Circuit has held:

> For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' Although it need not be the case that 'the very action in question has been previously held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent.'

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir., 2003) (citations omitted). When determining if a right is clearly established a court should "look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit], and finally to decisions of other circuits." *Masters v. Crouch*, 872 F.2d 1248, 1251-1252 (6th Cir. 1989).

The Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979) held that an inmate's interest in the right to be free from unreasonable searches and the jails interest in maintaining security must be balanced.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id*. at 559. The plaintiffs argue that the Sixth Circuit cases analyzing *Bell* emphasize the importance of the final *Bell* factor, the place in which a search is conducted, and clearly establish the right not to be strip searched in full view of other inmates and officers. The plaintiffs rely on *Dufrin v. Oakland County Sheriff Johannes Spreen*, 712 F.2d 1084 (6th Cir. 1983), *Dobrowolskyj v. Jefferson County*, 823 F.2d 955 (6th Cir. 1987), and *Masters v. Crouch*, 872 F.2d 1248 (6th Cir. 1989), to reach this conclusion. We disagree, and do not find a clearly established constitutional right to be free from strip searches viewed by other inmates and officers.

The court in *Dufrin* did not analyze a situation in which the detainee had been strip searched in front of others. The strip search Dufrin complained of was conducted in a privacy room. Although the plaintiffs stress that the court held the search constitutional because it was "carried out discreetly and in privacy[,]" this was not the only factor the court considered. *Dufrin*, 712 F.2d at 1089. The other factors the court considered in determining whether the search was constitutional

- 4 -

were (1) the type of crime Dufrin had been charged with and (2) the fact that she would potentially mingle with other inmates. *Id*. In fact, the court noted that "the Supreme Court has counselled (sic) us to accord a wide-ranging deference to those in charge of correctional facilities...." *Id*. Therefore, we cannot say that *Dufrin* clearly establishes a right to strip searches conducted in private.

*Dobrowolskyj* and *Masters* are also not dispositive of the issue. Neither of these cases were decided based upon where the strip searches were conducted. In *Dobrowolskyj*, although the strip search policy that the court reviewed required searches "be conducted in private," privacy was not the issue in front of the court. *Dobrowolskyj* 823 F.2d at 955. Dobrowolskyj sued the jail regarding the fact that strip searches were automatically conducted when a detainee was moved to a different area of the jail. Therefore, although the plaintiffs stress the fact that the court noted the privacy requirement of the jail's policy made the search less intrusive, it cannot be said to be the determining factor in the court's holding that the security interests of the jail outweighed the privacy interests of the inmates.

In *Masters*, the court did not find the search unreasonable because it was conducted "in front of a window in the holding room, in plain view of other persons[,]" but because an inmates right to privacy outweighed the jail's interest in conducting strip searches based on the single fact that a prisoner would come into contact with other prisoners. *Masters*, 872 F.2d at 1250; 1255. Therefore, although *Dufrin*, *Masters*, and *Dobrowolskyj* discuss the place in which a prisoner's strip search was conducted, it cannot be said to clearly establish a right to be strip searched in private.

The plaintiffs also argue that decisions from the Tenth Circuit and the Correction Department's policy regarding strip searches demonstrates that the right at issue here was clearly established. We disagree. Not only are the facts in the cases the Tenth Circuit analyzed distinguishable, the Sixth Circuit has held that for another circuit

> to provide such 'clearly established law,' these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind

>of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Virgili v. Gilbert*, 272 F.3d 391, 393 (6th Cir. 2001) (citation omitted).  Also, although the policy in place at the time the plaintiffs were searched provided that searches be conducted in a private area, the policy itself does not make it apparent that not conducting a strip search in complete privacy would be unconstitutional.  Therefore, we will hold that Young's conduct did not violate clearly established rights and that he is entitled to qualified immunity.

**Officer Ernest Fox**

Fox argues that he is entitled to summary judgment because he was not personally involved in the strip searches, and even if he was, he would be entitled to qualified immunity.  For the same reasons stated above, we will hold that Fox is entitled to qualified immunity.

The plaintiffs also argue that Fox should be held liable for failing to intervene and for participating in a "team effort."  The plaintiffs cite *Smith v. Heath*, 691 F.2d 220 (6th Cir. 1982), *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *Melear v. Spears*, 862 F.2d 1177 (5th Cir.1989), and *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989), for the proposition that officers who are present during the violation of another's civil rights and who fail to intervene can be held liable under section 1983.  Assuming arguendo that the plaintiffs' constitutional rights were violated, the holdings cited by the plaintiffs do not establish a theory for liability against Fox.  First, the facts of the cases can be distinguished since they do not deal with strip searches.  Second, as a matter of law, an officer cannot be held liable for failing to intervene when it would not be clear to a reasonable officer that a citizen's rights were being violated.

For these reasons, we will grant summary judgement in favor of Fox.

**Officer Jason Erion**

For the same reasons that we will grant summary judgement in favor of Fox, we will also grant summary judgment in favor of Erion.

**Sergeant Derek Browning, Lieutenant Brett O'Loughlin, and Captain Stewart Williams**

Browning, O'Loughlin, and Williams argue that they are entitled to summary judgment because the plaintiffs have failed to establish a claim against them based upon their status as supervisors. "The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982). The plaintiffs "must show that [the supervisory personnel] otherwise encouraged or condoned the actions of [the other officers]." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citation omitted).

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984).

The plaintiffs argue that supervisory liability should attach to these defendants because they failed to adequately instruct the officers performing the strip searches and/or condoned the officers' conduct by turning a blind eye to the allegedly unconstitutional actions. Browning, O'Loughlin, and Williams, however, cannot be held liable as supervisors since the right at issue was not clearly established. Therefore, we will grant summary judgment in favor of Browning, O'Loughlin, and Williams.

**Jefferson County Fiscal Court**

Municipality liability will only attach "when the 'execution of the government's policy or custom ... inflicts the injury....'" *City of Canton v. Harris,* 489 U.S. 378, 385 (U.S. 1989). However, the Court in *Canton* held that there are "circumstances in which an allegation of a "failure to train" can be the basis for liability under§ 1983." *Id*. at 387.  A plaintiff must show that "the failure to train amounts to deliberate indifference....  Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *Id*. at 389.

The Sixth Circuit has noted two situations which justify a conclusion of "deliberate indifference" on the part of a municipality: (1) the failure to provide adequate training in the light of foreseeable consequences, and (2) a failure to train in response to repeated complaints of constitutional violations.  *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).  Here, the plaintiffs argue that "deliberate indifference" can be established under either theory.

The plaintiffs argue that the need for better training was apparent based upon the fact that officers are required to perform strip searches on a recurring basis.  We disagree.  The plaintiffs present evidence that some officers involved were unaware of the strip search policy.  This, however, is not sufficient evidence that the Jefferson County Fiscal Court ("JCFC") failed to adequately train its officers in performing strip searches.  The fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 486 U.S. at 390-391.  The plaintiffs also argue that "deliberate indifference" is shown by the pattern of repeated complaints regarding strip searches in the Jefferson County jail system. Although plaintiffs cite to strip search complaints, we do not find that these complaints establish a "deliberate indifference" to a prisoner's right to be searched in private.  In fact, as the plaintiffs point out, the JCFC established a policy on June 26, 2001, stating prisoners should be strip searched in a private

- 9 -

area. Therefore, we do not find that the plaintiffs' allegation of a failure to train reflects a "deliberate indifference," and will grant summary judgment in favor of JCFC.[1]

## **CONCLUSION**

In light of our disposition of the federal claims in this action, we decline to address the pendent state law claims under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (19966) and its progeny. A separate order will be entered herein this date in accordance with this opinion.

---

[1] The plaintiffs have also named the Jefferson County Corrections Department ("JCCD") as a defendant in this action. The defendants have asserted that the JCCD is merely a division of the Jefferson County Government, and therefore, its liability would be the same as JCFC. KRS 67B.020(3), KRS 67B.030(2). Plaintiffs have made no response to this argument, and the court has not identified any law that contradicts this assertion. Therefore, we will also grant summary judgment in favor of JCCD.